UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LISSETTE QUINONES-CASTRO**

    Plaintiff,

vs.

Case No.: _____

**SCOTT RANDOLPH, as the Tax Collector of Orange County, Florida.**

    Defendant.

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, LISETTE QUINONES-CASTRO ("Plaintiff"), by and through her undersigned attorneys, brings this action against Defendant, SCOTT RANDOLPH, as the Tax Collector of Orange County, Florida ("Defendant"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112, 42 U.S.C. § 12203, and 42 U.S.C. § 12111 *et seq.*, as well as the Florida Civil Rights Act ("FCRA"), §760.01 *Florida Statutes, et seq.*, and §760.10 *Florida Statutes, et seq.*

1

## JURISDICTION AND VENUE

2. As some claims arise under the Americans With Disabilities Act, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and jurisdiction under 28 U.S.C. § 1343.

3. Defendant is a governmental agency which has jurisdiction to operate in Orange County, Florida.

4. Defendant's principal place of business is located in Orange County, Florida.

5. Defendant employed Plaintiff to work in Orange County, Florida.

6. At all times material to this action, Defendant was operating in Orange County, Florida.

7. This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE PREREQUISITES

8. All conditions precedent to the bringing of this action have occurred.

9. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 2, 2019.

10. The EEOC investigated and upon competition of that investigation referred the charge to the United States Department of Justice.

11. On October 4, 2022, the United States Department of Justice issued a "Notice of Right to Sue Within 90 days."

## PARTIES

12. Defendant, SCOTT RANDOLPH, is sued herein in his official capacity as the Tax Collector for Orange County, Florida and not individually.

13. Defendant is the Tax Collector for Orange County, Florida and manages his duties with his agency, the Orange County Tax Collector's Office.

14. At all times between December 1, 2017 and May 30, 2019, Defendant employed 15 or more full time employees.

15. On May 30, 2019, Defendant employed 15 or more full time employees.

16. At all times relevant hereto, Plaintiff was an employee of Defendant.

17. Plaintiff began her employment with Defendant in December of 2017.

18. Defendant terminated Plaintiff's employment on May 31, 2019.

## FACTUAL ALLEGATIONS

19. Plaintiff was hired by Defendant as a part-time clerk in December of 2017.

20. Plaintiff worked in the registration line at the tax collector's office.

21. At the time of her hire, Plaintiff informed Defendant that she had an auto-immune disease.

22. Plaintiff provided Defendant with documentation from a medical professional which diagnosed her with Lupus.

23. There is currently no cure for Lupus.

24. Lupus is a lifelong disease.

25. Plaintiff provided Defendant with documentation from a medical professional which diagnosed her with Sjorgeens.

26. Plaintiff provided Defendant with documentation from a medical professional which diagnosed her with Hypoglycemia.

27. In May of 2019, Plaintiff applied for the full-time position of Customer Service Specialist I.

28. During her interview with Mr. Chris Lane, Plaintiff was informed that the schedule and hour requirement for the full-time position was "very, very strict."

29. During her interview with Mr. Chris Lane, Plaintiff was instructed to ensure that her health did not get in the way of the full-time schedule requirement of the position.

30. Plaintiff was assigned the position of Customer Service Specialist I on May 13, 2019.

31. The Customer Service Specialist position provides three different services at two different "desks."

32. The two "desks" that the Customer Service Specialists provides services for are 1) Registration and Titles; and 2) Drivers Licenses.

33. Customer Service Specialists are not assigned a fixed desk, but will rotate on a weekly or biweekly basis to different desks.

34. Out of the two "desks," the Registration and Titles desk requires that employees go outside to verify the Vehicle Identification Number ("VIN") of vehicles that customers are requesting titles for.

35. The Drivers License "desk" does not require that employees go outside for any verifications.

36. Plaintiff began in that position and presented Ms. Consuela Baker ("Baker") in Human Resources with a doctor's note containing several restrictions.

37. At this same time, on May 21, 2019, Plaintiff informed Defendant that she had to undergo emergency eye surgery to remove a tumor.

38. Plaintiff produced a doctors note stating that she needed to be home from May 27, 2019 through May 30, 2019 for the surgery and recovery.

39. Plaintiff requested a reasonable accommodation of allowing her to wear tennis shoes.

40. This reasonable accommodation would not have imposed an undue hardship on Defendant.

41. Plaintiff requested a reasonable accommodation of permitting her to eat snacks as needed.

42. This reasonable accommodation would not have imposed an undue hardship on Defendant.

43. Plaintiff requested a reasonable accommodation of permitting her to avoid being in direct sun light.

44. In particular, Plaintiff requested that she not be rotated to the Registration and Title "desk," that she be permitted to not work on the Drivers License "desk" so as to avoid direct sunlight.

45. This reasonable accommodation would not have imposed an undue hardship on Defendant.

46. Without discussing further with Plaintiff, Baker decided that these accommodations would be an undue hardship.

47. Without discussing further with Plaintiff, Baker informed Plaintiff that she was being moved to the call center and made a Phone Center Specialist.

48. A Phone Center Specialist is nothing more than an operator who answers questions and works in a cell center.

49. Plaintiff objected as the position had less prestige than her current position and stated that that there was little to no opportunity for advancement at the call center.

50. Plaintiff objected and stated that she felt this was retaliation for now asking for an accommodation.

51. Baker demanded that Plaintiff produce a note saying that her accommodation requests were real accommodations.

52. Baker then informed Plaintiff that she would be reporting to the call center directly after she returned to work.

53. Plaintiff sent Baker an additional email while she was recovering, asking for additional accommodations that would fit the new role in the call center.

54. Plaintiff asked for an anti-glare monitor as a reasonable accommodation.

55. This reasonable accommodation would not have imposed an undue hardship on Defendant.

56. Plaintiff asked for a stand-up/sit down desk as a reasonable accommodation.

57. This reasonable accommodation would not have imposed an undue hardship on Defendant.

58. On May 31, 2019, Plaintiff reported to the call center as instructed.

59. Plaintiff approached the manager of the call center and asked where she should sit and what she should be doing.

60. The manager of the call center was confused and stated that she was unsure of why Plaintiff was there.

61. The manager of the call center took Plaintiff to their office, placed a call to HR, and handed the phone to Plaintiff.

62. Plaintiff was then informed by Baker that she was being terminated for "excessive absenteeism."

63. Plaintiff was informed by Baker that multiple calls had been placed to her cell phone, home phone, and something that was referred to as "messages."

64. Plaintiff informed Baker that she had never received calls and that she had been recovering from emergency surgery with a doctors note.

65. Baker informed Plaintiff that a letter had already been mailed to her home earlier stating that she was terminated.

66. Plaintiff left the call center and returned home.

67. Plaintiff opened the mailbox upon her return and found a letter from Baker in her mailbox.

68. The letter had a regular stamp and it was not postage marked by USPS, indicating it had never been sent, but rather was hand delivered that morning.

69. Plaintiff was discriminated and retaliated against for requesting a reasonable accommodation, and for objecting to that discrimination and retaliation.

70. Defendant's stated reason for termination is pretext for its discriminatory and retaliatory practices.

71. Plaintiff suffered a period of time during which she was out of work.

72. Plaintiff suffered mental distress, embarrassment, mental anguish, and emotional pain.

73. If not for the actions of Defendant, Plaintiff would not have suffered damages.

74. Plaintiff has had to secure the services of Wilson McCoy, P.A. to prosecute her claims, and is required to pay Wilson McCoy, P.A. a reasonable fee, as well as pay for costs of the action.

## COUNT I - FCRA
## FAILURE TO ACCOMMODATE

75. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

76. Plaintiff's condition was a disability as defined by the FCRA since it substantially limited one or more of her major life activities.

77. Plaintiff requested several different reasonable accommodations, all documented with doctors notes, on several occasions.

78. Plaintiff was qualified to perform the essential functions of her job with a reasonable accommodation.

79. Defendant not only denied Plaintiff's requested accommodation, but Defendant failed to interact with Plaintiff on her subsequent requests for a reasonable accommodation.

80. Plaintiff's requested accommodations were reasonable.

81. Plaintiff was not a direct threat to the general public as a result of her disabilities.

82. Plaintiff's requested accommodations would not create an undue hardship on Defendant.

83. Plaintiff's requested accommodations did not pose an undue burden to Defendant.

84. But for her actual disability, or because of her request for a reasonable accommodation, Defendant would not have been terminated or moved to a less prestigious position with a lack of upward mobility.

85. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

86. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

87. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

88. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

   a. Back pay and benefits;
   b. Interest in back pay and benefits;
   c. Front pay and future benefits;
   d. Compensatory damages for emotional damages;
   e. Other non-pecuniary damages;
   f. Injunctive relief;
   g. Attorneys' fees and costs; and,
   h. For such other relief this Court deems just and equitable.

## **COUNT II - FCRA** <br> **DISABILITY DISCRIMINATION**

89. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

90. Plaintiff's condition was a disability as defined by the FCRA since it substantially limited one or more of her major life activities.

91. Defendant knew of Plaintiff's disabilities.

92. Plaintiff was able to perform the essential functions of her position with a reasonable accommodation.

93. Plaintiff asked for that reasonable accommodation.

94. Defendant moved Plaintiff from her current position to a call center which significantly reduced her opportunity for career advancement.

95. Defendant then pretextually terminated Plaintiff's employment when she attempted to comply with the discriminatory change of her position by Defendant.

96. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

97. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

98. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

99. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

    a. Back pay and benefits;
    b. Interest in back pay and benefits;
    c. Front pay and future benefits;
    d. Compensatory damages for emotional damages;
    e. Other non-pecuniary damages;
    f. Injunctive relief;
    g. Attorneys' fees and costs; and,
    h. For such other relief this Court deems just and equitable.

## **COUNT III - FCRA RETALIATION**

100. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

101. Plaintiff asked Defendant for an accommodation for her disability on several occasions.

102. As a result of asking for an accommodation, Plaintiff was sent to a call center where her job had less prestige and less possibility for career advancement.

103. Plaintiff complained that this was retaliation for her asking for an accommodation.

104. Plaintiff's request for accommodation and complaint that she was being retaliated against was protected speech.

105. Plaintiff subsequently requested additional reasonable accommodations for the position she was move to in retaliation.

106. Plaintiff was retaliatorily terminated less than two weeks after her requests for accommodation and challenging of the retaliatory employment decision of Defendant.

107. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

108. Defendant engaged in retaliation against Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

109. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

110. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

     a. Back pay and benefits;
     b. Interest in back pay and benefits;
     c. Front pay and future benefits;
     d. Compensatory damages for emotional damages;

    e. Other non-pecuniary damages;
    f. Injunctive relief;
    g. Attorneys' fees and costs; and,
    h. For such other relief this Court deems just and equitable.

## COUNT IV - ADA
## FAILURE TO ACCOMMODATE

111. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

112. Plaintiff's condition was a disability as defined by the ADA since it substantially limited one or more of her major life activities.

113. Plaintiff requested several different reasonable accommodations, all documented with doctors notes, on several occasions.

114. Plaintiff was qualified to perform the essential functions of her job with a reasonable accommodation.

115. Defendant not only denied Plaintiff's requested accommodation, but Defendant failed to interact with Plaintiff on her subsequent requests for a reasonable accommodation.

116. Plaintiff's requested accommodations were reasonable.

117. Plaintiff was not a direct threat to the general public as a result of her disabilities.

118. Plaintiff's requested accommodations would not create an undue hardship on Defendant.

119. Plaintiff's requested accommodations did not pose an undue burden to Defendant.

120. But for her actual disability, or because of her request for a reasonable accommodation, Defendant would not have been terminated or moved to a less prestigious position with a lack of upward mobility.

121. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

122. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the ADA.

123. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

124. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

   a. Back pay and benefits;
   b. Interest in back pay and benefits;
   c. Front pay and future benefits;
   d. Compensatory damages for emotional damages;
   e. Other non-pecuniary damages;
   f. Injunctive relief;
   g. Attorneys' fees and costs; and,
   h. For such other relief this Court deems just and equitable.

## COUNT V - ADA
## DISABILITY DISCRIMINATION

125. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

126. Plaintiff's condition was a disability as defined by the ADA since it substantially limited one or more of her major life activities.

127. Defendant knew of Plaintiff's disabilities.

128. Plaintiff was able to perform the essential functions of her position with a reasonable accommodation.

129. Plaintiff asked for that reasonable accommodation.

130. Defendant moved Plaintiff from her current position to a call center which significantly reduced her opportunity for career advancement.

131. Defendant then pretextually terminated Plaintiff's employment when she attempted to comply with the discriminatory change of her position by Defendant.

132. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

133. Defendant engaged in discrimination against Plaintiff with malice and reckless indifference to Plaintiff's rights under the ADA.

134. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

135. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

a. Back pay and benefits;
b. Interest in back pay and benefits;
c. Front pay and future benefits;
d. Compensatory damages for emotional damages;
e. Other non-pecuniary damages;
f. Injunctive relief;
g. Attorneys' fees and costs; and,
h. For such other relief this Court deems just and equitable.

### **COUNT VI - ADA RETALIATION**

136. Plaintiff realleges and adopts, as if fully set forth herein, the allegations set forth in ¶¶ 1-74.

137. Plaintiff asked Defendant for an accommodation for her disability on several occasions.

138. As a result of asking for an accommodation, Plaintiff was sent to a call center where her job had less prestige and less possibility for career advancement.

139. Plaintiff complained that this was retaliation for her asking for an accommodation.

140. Plaintiff's request for accommodation and complaint that she was being retaliated against was protected speech.

141. Plaintiff subsequently requested additional reasonable accommodations for the position she was move to in retaliation.

142. Plaintiff was retaliatorily terminated less than two weeks after her requests for accommodation and challenging of the retaliatory employment decision of Defendant.

143. As a result of Defendant's conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorneys' fees and costs.

144. Defendant engaged in retaliation against Plaintiff with malice and reckless indifference to Plaintiff's rights under the ADA.

145. Plaintiff suffered emotional pain, mental anguish, and embarrassment as a direct result of Defendant's unlawful discrimination.

146. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant, including, but not limited to:

   a. Back pay and benefits;
   b. Interest in back pay and benefits;
   c. Front pay and future benefits;
   d. Compensatory damages for emotional damages;
   e. Other non-pecuniary damages;
   f. Injunctive relief;
   g. Attorneys' fees and costs; and,
   h. For such other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for all issues so triable.

Dated this 22nd day of December 2022.

>Respectfully submitted,
>
>*s/ Paul Sutherland*
>Paul L. Sutherland, Esq.
>Florida Bar No. 1008093
>Molly Mullen, Esq.
>Florida Bar No. 1038812
>WILSON MCCOY, P.A.
>100 E. Sybelia Ave., Suite 205
>Maitland, Florida 32751
>Telephone: (407) 803-5400
>psutherland@wilsonmccoylaw.com
>mmullen@wilsonmccoylaw.com
>pleadings@wilsonmccoylaw.com
>
>**Attorneys for the Plaintiff**